Good morning. My name is Mark Bayless, and I'll be arguing on behalf of the appellant, Mark Youngman, this morning. If I may, I'd like to start with the sentencing issues first, because this appears to be an area that is evolving over the last couple of years since Blakely and Booker and those decisions, and it also appears to be an area where there is much litigation coming out of the various circuits. One of the things that I would start with is just the primary premise and an argument that was raised in the low court as to which sentencing guideline manual should have been applied in this case. It is Mr. Young's position that the 2000 version of the sentencing guideline manual should have been applied. And the reason for that is there is a very favorable difference if you apply the 2000 version of the sentencing guidelines to his case as opposed to the 2004, 2005 version. Specifically, under ‑‑ But under Booker, it's not mandatory. That's correct. After Booker, it is not mandatory, but it appears to be the policy that if, under ex post facto principles, if an earlier version is the more favorable version and the crimes occurred during that time frame, then the earlier version should be the sentencing manual which should be applied. In this particular case, the 2000 version, section 2F1.1A had a base level offense of six, and the loss amount, if it was greater than 350,000 but less than 500,000, you added another nine points. So that created a range of 14 with a 15‑21 month range. Under the later version, apparently 2F1.1A, effective November 1, 2001, was merged or consolidated into section 2B1.1. And after November 1, 2001, the base level, again, was six, but the loss amount had a different range. And if the loss was greater than 400,000 but less than 1 million, you added 14 points. So now you have a level 14 based on the base level offense and the monetary loss. And if my calculations are correct in looking at the table, that's 33 to 41 months. So there is a major distinction between which guideline manual should be applied. There's no question that as to the HUD fraud counts, at least in my opinion, and obviously I will defer to the courts, that they occurred prior to the effective date. They occurred according to what I can discern between June 20, 2000, and August 30, 2001. So certainly as to those counts, he should have been sentenced under the 2000 version of the guidelines. The issue becomes the conspiracy count. And it's our position that the conspiracy concluded around August of 2001. The scope of the ‑‑ when you look at a conspiracy, the scope of the conspiracy is defined by the agreement. And in this particular case, we had one of the co‑conspirators and I submit one of the key witnesses for the government, Leo Warner, testify. And according to his testimony, he met with Mr. Young after the holidays, he estimated around January of 2000, and they came to a verbal agreement. And I will tell you, I'm somewhat hesitant to point this out to the court, because one of the arguments I raised was sufficiency, insufficiency evidence, but I do feel this is an important point. And according to Mr. Warner's testimony, they met, and there's this ‑‑ I called it the group, because that's what's routinely referenced in the lower group, but there was a group of ‑‑ I just want to make sure I understand. Your argument as to which guidelines would have been applicable is based on the date of the commission of the offense? The date that they ended. On the conspiracy. Right. The conspiracy count ‑‑ You're saying that it ended before the 2001 revision came into effect. That's correct. And therefore, even though the guidelines are not mandatory, the first step where you have to kind of figure out what your range is, as a matter of law, they should have used the earlier guidelines, not the later guidelines. Correct. And again, I'm recognizing that the guidelines are advisory, but I will tell you, as a practitioner in the lower court, that what the courts ‑‑ No, it makes a difference as to your starting point. Right. And that's exactly ‑‑ that's it. Based on the recent decisions of Kimbrough and Cardi, that appears to be the criteria now. We have to start with a starting point. And the starting point in this case, and it's our position, is the 2000 version of the guidelines should have been applied, and if the court did determine that the monetary loss was approximately $437,000, as the court determined, then it should have been a plus 9 enhancement and not a plus 14 enhancement. And again, that makes a big difference for purposes of sentencing, assuming everything else is correct. And later in my argument, I am going to address some issues that I feel that the oral pronouncement by the court was deficient. Now, the sentence the judge gave, was that outside the level? It would have been ‑‑ it would not have been outside the level of the 2004 or 2005 version. And this ‑‑ And the problem is, then, if it isn't outside the level, don't we have some harmless error review? I don't believe so. I mean, we can ‑‑ I mean, the honest truth is, we have quite a bit of precedent on our court that suggests that if we don't calculate the level, and then we go outside the level and high level extreme, that we ought to send it back and recalculate the level. But if we don't even go out the calculation guidelines, and we're ‑‑ and we don't hit that level, we have precedent that suggests for procedural error that it's harmless error. And that it isn't something we've got to recalculate if he doesn't go outside the guideline range anyway. But, again, I ‑‑ And that's my worry. Well, I think, and again, I'm ‑‑ I'm looking at Kimbrough and Carthy, the recent decisions by this Ninth Circuit. I think that all sentencing proceedings must begin by determining the applicable guideline range. Well, and I ‑‑ and I appreciate that, but my worry is that as to this particular argument, even if I agree with you, even if, that we're not outside the guideline range in any event. And, therefore, it doesn't seem to me to be something where our precedent would cause me to change the sentence. By then, I think ‑‑ Well, if we were to send it back for resentency, just to hit the right guideline. If we were to send it back, you would agree that the judge could impose the same sentence. I would, and I would submit that the court, if it determined that the monetary loss was $437,000 and some change, as it determined, if that was his determination, he determined that correctly. Then I would submit that his application would be a plus 9 and not a plus 14, because under the ex post facto argument ‑‑ Under the 2000 guidelines, what would be the range? Well, I just did it. I stopped right there, quite frankly. But according to my calculations, if he took the low end of the range, just adding the base level and the plus 9, that would be a 15‑month, and the low end of the range under the 2004, 2005 would be 33 months. Then he could add on the other enhancements that he used, the plus 2 for the mass marketing and lead organizer, plus 4, this and that. But the difference appears to be about 18 months, 33 minus 15 would be just based on that one application of the guidelines. That would be the difference in my client's sentence, a reduction. Let's do it a different way. If he took the maximum, which is 21, based on your calculations? Under the 2000 version, it would be 15 to 21 months. And that's just the base level plus the monetary loss. If he wanted to add everything else on, is his sentence above that? It would be above the 15 to 21 months. That's correct. Yes, Your Honor. Well, it's above that, but it's not above the everything added on. Maybe I misunderstood the question. I apologize. If you take the 15 to 21 and add everything on. Are you talking about the other enhancements at the court? Yes. Then do you get a different sentence than he got in terms of what might be the maximum? It would be, if you added everything on, still applied exactly what the court did. The court in this case did 60 months, the statutory maximum, for the conspiracy, and then did 18 months for each of the fraud counts, ran them consecutive to the 60 months, but concurrent to one another. And that brings me to another argument that I want to make. Well, the other one, too. Oh, okay. I'm sorry. So I'm just trying to understand. The bottom line is, in your view, if he used the 2,000 as a baseline, and then they add everything else that he got, what would have been the top end? And how does that compare to the sentence he got? Okay. That's the question we have to answer. If you get to the same place, albeit maybe mistakenly, then there's not a problem. And you wouldn't get to the same place, because, as I said, he did 60 months, gave him the maximum that you can give, the statutory maximum. And let me explain why I'm going to say what I'm about to say. He tried to fashion his sentence to comply with the sentencing guidelines. The recommendation in the pre-sentence investigation report was 78 to 97 months. That was the recommendation. He gave the low end of the sentencing guidelines, and he fashioned his sentence to fit the 78 months. And if he had applied the correct guideline manual, he would have, it would have been a reduction of about 18 months to my client. So he wouldn't necessarily have had to sentence him to a maximum, statutory maximum, under the conspiracy, because he would have been, the bottom end of the range would have been about 60 months. If you take the distance. My worry, counsel, is this. What you've explained to me, and my reasoning of it was, even if wrong, and we re-sentence under your particular suggestion, we cannot get out of the guideline range. We may not be at the low end of the range, but we can't get out of the guideline range. And therefore, given our precedent, since we didn't exceed the guideline range in any event, it is harmless error to just send it back and have somebody recalculate for procedural error the correct guideline calculation. And I respectfully disagree. I mean, I understand what the law is. But I do believe we do get out of the guideline range. The recommended guideline range was 78, the bottom end of 78 months. He couldn't get there because he maxed, the statutory maximum for conspiracy was only five years. So he had to take the other counts and add the 18 months. If you apply the 2000 version of the Sentencing Guideline Manual, the bottom end of the guideline range would not be 78 months. It would be substantially lower. It would be about 18 months lower. But it's 78 months outside the guideline range. It's 78 months outside the guideline range. It would have been, again, I don't have the calculations. My understanding is it's not outside the guideline range. It's just not the bottom that you want to meet. But let me go, and if I can, just try to bring it up. And I'm just suggesting that's a question I have. You don't have to put all your argument into that if you've got other. One of my arguments is, is that the district court gave too much weight to the guidelines, that the district court impermissibly gave heavy weight to the guidelines relative to the other factors under 3553. If I understand the recent case law, it's the district court's job is not to impose a reasonable sentence, but rather a district court's mandate is to impose a sentence sufficient but not greater than necessary, and that's to look at the 3553 factors. If you look at what this district court did, and I would advise that this sentence hearing occurred before Cardi. So Cardi came after. And one of the things I would submit to the court, if you look at the record, and it's contained in the excerpt of 2375 and 76. He does, after they go through all the sentencing guideline enhancements and all the different things, he does give, does address a couple of the 3550 factors, but then says, I believe. I thought he gave a virtual recitation of the 3550. I didn't read it quite as a virtual recitation. He just kind of went through the factors. Well, I was surprised. This judge really tried to lay them all out there. And then he says, the sentence is, considering the history here, the character. I mean, I can read you the sentence. Actually, I was going to read it to you. Finally, defense counsel asked the court if it relied heavily on the PSR, and the court responded, I don't know if I'd characterize it relying heavily on it. I did rely on it, yes. Well, actually, how I interpreted that whole scenario is they go through the enhancements. You know, they have these lengthy arguments. They even had an evidentiary hearing where the government's expert, Frank Grillo, went into the monetary loss, and they made extensive arguments over the sentencing guideline enhancements. And the court on Canadian excerpt 2375 says, in this court's opinion, the amount is. And he was actually talking about restitution just a few breaths earlier. He says, in case, considering the history here, the characteristics of the defendant and the crime and evidence, that it is sufficient but is not greater than necessary to reflect the seriousness of the crime, to promote respect for law, and to provide just punishment and afford adequate deterrence to criminal contact and protect the public. So he's basically just reading off the factors. He's not explaining why he feels all that. But I will tell you, you know, that's pretty typical. The district courts know what you, the public courts, have said, and they pretty much put that in every record. They just kind of read them off. I'm not saying they all do. You may think they all do, but there's a few we've got up here who don't. But they don't explain it. He just reads them into the record, and then he makes, on the next page, he makes a statement that really starts it. And he says, and this is in the excerpt at 2360.76, the court finds that the calculation of the guidelines is reasonable and the application of them and the recommendation is reasonable. Then the government counsel must be thinking for a minute here, and he says, wait a minute. Did the judge ever say he recognized that the guidelines are advisory? So then he stands up and he tries to clean it up for the judge. And a few pages later, he brings up that fact to the judge, and the judge says, and this is on 2384. I think that was the part you were referring to. The court does acknowledge, I don't know that it's necessary for the court to acknowledge that. The courts have spoken. The court understands that it is not mandatory. In this particular case, the court does feel it's necessary for it to consider them and has considered them. In this particular case, it's considered them and found them to be, in the court's view, reasonable. And for that reason, it did it. It did it and not do it because the court felt it was bound to do so but because it felt it was reasonable and not just fair to do so. And, again, I'm going to go back to my initial where I started. It is the district court's job not to impose a reasonable sentence, but rather a district court's mandate to impose a sentence sufficient but not greater than necessary. Isn't that a definition of a reasonable sentence? No. Apparently. It seems to be very reasonable. Well, I disagree. I think. Something reasonable, but it could be more than necessary. Here's the problem. We have this appellate presumption, presumption of reasonableness. That's for the appellate courts. That's not for the district courts. And there seems to be confusion that that presumption of reasonableness doesn't now the presumption that the district courts are to apply when it comes to the sentencing guidelines. They are bound by 3553, and they're not to give undue weight to the sentencing guidelines. If I were a district court judge and I knew that the court of appeals was going to judge me on reasonableness, I believe I would try to impose a reasonable sentence. But that's, again, I think what's happening here is the court is interpreting reasonable as all-encompassing to the 3553 factors, and it's not. If you look at Cardi, and I want to say 4 and 5 are deals with the presumption of reasonableness, and, again, I'm kind of, I have a red light. I've lost your judge. Sotomayor. Can I just make one comment? Take one last comment and then we'll hear from the government on the sentencing. Honestly, Your Honor, at the very least, I would have asked the Court to remand this, because I am not convinced that if the Court had not given the heavy weight to the sentencing guidelines, that the Court would not have given a lower sentence penalty. I think we have here a recommended measure. Thank you, Your Honor. We'll hear from the government. Good morning, and may it please the Court, Robert Ellman for the United States. The ex post facto argument that opposing counsel makes is foreclosed by three cases, primarily Booker itself, which states that both the remedial, actually both opinions, do apply retroactively. This Court has affirmed that in Dupas as well as Staten. I believe both cases are cited in the briefs. In any event, the argument appears to be built on the theory that the conspiracy ended at a certain point. But the only evidence to that effect is testimony that one of the many co-conspirators withdrew at a certain point. The conspiracy began before, and we're talking about a man named Leo Werner here, who ran the real estate agency. He joined the conspiracy well after it started and apparently left the conspiracy long before it ended. So the theory is factually ill-founded. The statutory maximum still controls, in any event, which is 60 months on the conspiracy count. I believe Mr. Bayless said twice that the difference in the range, if you credited his argument, would be 18 months. That would bring the range down from 78 months to 60 months. 60 months is both the statutory maximum and, in his calculations, the guidelines minimum. So the sentence would still have to be 60 months. So a remand seems pointless to me. The amount, I won't belabor this, but the amount of the monetary loss was considerably more than $457,000. And I concede the government did not attempt in any way to cross-appeal from that. But if you look at Exhibit 2 from the sentencing hearing, you'll see that even without the interest, which is the contested amount, the amount approaches $1 million. So 14 levels would still apply. I think that's all I had on ex post facto. And then the idea that too much weight was given to the guidelines range, I think the panel has already fleshed out fairly well that that simply is not borne out by the record. I'd also point out that in the briefing on this issue, in the opening brief, there's no argument on it at all. There is a three-page exposition on the meaning of booker, and then there's a one-paragraph conclusion at page 33 that says simply the court gave too much weight to the guidelines range. And then there's a citation to the record only to the extent that these arguments were made in district court. And we don't argue that it was waived. It was certainly preserved, but then it was abandoned on appeal. So I don't think it's reviewable here. Unless the Court has any questions, I'll waive the remainder of my time. Thank you. Thank you. You have half a minute. There's not a lot. He didn't add too much, so more than his brief. Again, the only argument I would make is I am, if the Court had not felt that the sentencing guidelines were given such heavy weight to the sentencing guidelines, there's no way we could tell if it would not have given a lesser sense if it had applied the 2000 guideline sentencing manual. And I don't think the fact that it gave the low end necessarily means it wouldn't have gotten given a lower end if it had applied the manual. Because the reason I say that, it went along with what the manual said. So if the manual said plus 9 as opposed to plus 14, the judge would have gone with plus 9. That is my firm belief, and I would submit it to the Court. Thank you. I thank both counsel for your argument this morning and your briefing and the case just argued of the United States v. Young as submitted. We're adjourned for the morning. Thank you. Thank you. Thank you very much for your arguments.
judges: Fletcher, McKeown, Smith